E. K. DIEHL, Trustee, Appellant, v. AMERICAN LIFE INSURANCE
COMPANY, Appellee.

**INSURANCE:** Life Insurance—Premiums—Failure to Pay Note—
1 **Lapse of Policy.** A policy of insurance unqualifiedly lapses upon
the failure of the insured to pay at maturity a promissory note
which he has given for an annual premium, such effect being ex-
pressly provided for in the application and in the policy and in
the said note, and the note clearly providing that it was not given
*as payment.*

**INSURANCE:** Life Insurance—Discriminations, etc.—Permissible Col-
2 lateral Agreements. The act of an insurer in granting to the in-
sured, through the medium of a promissory note, an extension of
time in which to pay an accrued annual premium, on condition that
the nonpayment of the note at maturity shall *ipso facto* void the
policy, is not violative of the statutes (1) which prohibit discrimi-
nations among policyholders, (2) which require the entire contract
to be inserted in the policy, and (3) which require all forms of
policy or contracts of insurance to be filed with and approved by
the commissioner of insurance. (Sec. 8666 *et seq.*, Code of 1924.)

**INSURANCE:** Life Insurance—Premium—Non-right to Grace in Pay-
3 ment of Note. An insured who has the policy right to 30 days'
grace in which to pay a premium after its maturity, before the
policy lapses, but who applies for and is granted a much longer
time, through the medium of a promissory note, in which to pay,

may not insist that the 30-day *policy* grace shall be added to the maturity date of the *note*.

Headnote 1:    32 C. J. p. 1300.    Headnote 2:    32 C. J. pp. 1112 1115, 1118, 1311.  Headnote 3:   32 C. J. p. 1197.

Headnote 1:  14 R. C. L. 977.  Headnote 3:  L. R. A. 1917C, 921; 14 R. C. L. 977.

*Appeal from Linn District Court.*—F. L. ANDERSON, Judge.

MAY 10, 1927.

REHEARING DENIED NOVEMBER 15, 1927.

The plaintiff appeals from a judgment dismissing his petition in an action to recover on a life insurance policy.— *Affirmed.*

*Raymond N. Klass* and *Floyd Philbrick,* for appellant.

*Deacon, Sargent & Spangler,* for appellee.

MORLING, J.—The insured gave to the company his note for an annual premium, and died a few days after it became due, without paying it. The question is whether the policy lapsed.

The policy was issued April 30, 1917. Premiums were paid to April 30, 1923. On April 28, 1923, insured wrote the company that he was not then able to pay the premium, but would be in 90 days, if the company would take his note. On May 2, 1923, the company sent insured a note for signature, requiring also payment in cash of interest on a policy loan. Insured signed the note, and on May 10, 1923, forwarded it to the company, and later remitted the interest on the policy loan.

1. INSURANCE: life insurance: premiums: failure to pay note: lapse of policy.

The policy granted the insurance in consideration of the written application "and of the payment in advance of $62.10 as the premium for one year's term insurance terminating on the 30th day of April, 1918, * * * and in further consideration of the payment of a like sum on or before the 30th day of April in every year thereafter. * * * a grace of 31 days (without interest charge) will be allowed for the payment of renewal

premiums during which time this policy will remain in force. * * * Renewal premiums may be paid annually, semiannually or quarterly in advance in accordance with the company's table of rates applicable thereto and the insured may change from one to another of such modes of payment upon written request. * * * If any premium is not paid when due, this policy shall be *ipso facto* null and void and all premiums forfeited to the company, except as herein provided. * * * The insured shall be entitled to * * * apply the dividend to the reduction of any premium * * * This policy is automatically non-forfeitable after premiums have been paid for three full years. If any renewal premium thereafter is not paid before the expiration of the period of grace herein allowed this policy will without action of the insured or payment of further premiums continue as non-participating paid-up insurance. * * * If there is no indebtedness to the company, and if there are no dividends or insurance additions the insurance will be for the term * * * to be reckoned from the due date of the unpaid premium. In lieu of such term insurance upon the insured's written request * * * the company will: (a) Issue a non-participating paid-up life policy * * * (b) Pay the guaranteed cash value specified * * * The said non-forfeiture benefits shall be increased by the net value of any dividend accumulations or paid-up insurance additions or shall be decreased proportionately by any existing indebtedness to the company on account of this policy. * * * Upon written request of the insured * * * made prior to default in premium payment, the company will charge as an indebtedness against this policy, the premium or premiums thereafter falling due * * * provided the then maximum cash surrender value * * * shall be sufficient to cover such loan. * * * At any time after three full years' premiums have been paid and while this policy is in force * * * the company will loan * * * a sum equal to or * * * less than the reserve at the end of the current policy year plus the net value of any existing additions thereto, * * * with interest * * * payable annually in advance, which interest if not paid when due shall be added to the principal. * * * The company will deduct, however, from said loan value any existing indebtedness on this policy and any unpaid balance of the premium for the current policy year and failure to repay any loan or pay interest thereon shall not void this policy unless the

total indebtedness to the company shall equal or exceed the maximum loan value of this policy and any existing additions thereto at the time of said failure nor until one month after notice. * * * This policy may be reinstated * * * at any time after default in the payment of any renewal premium, provided the insured applies therefor on the company's form and furnishes evidence of insurability satisfactory to the company and pays in cash all past-due premiums with interest * * * and provided also that any indebtedness to the company at date of default * * * shall be a first lien against this policy * * *.''

By the application the insured agreed ''that the nonpayment during my lifetime and good health * * * of any premium * * * shall render the insurance null and void, except as otherwise provided in the policy.''

In March, 1922, the insured borrowed of the company the full amount of the loan value of the policy.

Insured executed to the company the note previously referred to. It is dated April 30, 1923, by its terms is due October 30, 1923, and is for $62.10, with interest from date. The note recited the amount as being the full amount of the annual premium payable April 30, 1923, and declared ''that neither the note nor any extension thereof is given or accepted as a payment of said premium, and I agree that the nonpayment of this note or any extension thereof at maturity shall *ipso facto* lapse said policy and there will be due the proportionate part of the face of this note, with interest, that the time from the date of maturity of this note or any extension thereof bears to the whole time covered by said premium. I also agree that upon the nonpayment of this note, or any extension thereof, if said policy should have any cash value, the company may charge the proportionate part of this note, or any extension thereof, that may be due as above provided, against such cash value, and any extended insurance value it may have shall be accordingly reduced.''

The note was not paid. Insured died. November 1, 1923. Notice was given to the company the same day. The company answered the notice November 5, 1923, claiming lapse ''for failure to pay the premium extension note,'' and stating further that the insured had borrowed the entire value of the policy, and no value remained to carry the policy beyond the date

when the note was due. A dividend of $1.10 was applied on the note, as it might be, for the earned portion of the premium not paid. The note has not been surrendered, nor any claim filed on account of it. The case was tried before the court without a jury, and judgment rendered for the defendant.

I. The policy and the note were prepared by the defendant. It is a familiar rule that ambiguities and uncertainties of meaning are to be resolved against the party responsible for the language used. Nevertheless, the language may not be forced, in order to create ambiguity or to render uncertain that which is plain. Life insurance is among the most sacred of contract relationships. It is important to the living policyholders, as well as to the beneficiaries of those who have died, and to the company, that uncertainties and artificial interpretations be avoided, to the end that the cost may be kept down and the rights of policyholders definitely fixed and known. We have no occasion here to consider the nature of the relationship of the company to its policyholders, or of their interest in its funds, or the consequences thereof, as laying the foundation for a charge of oppressiveness or constructive fraud in supplemental or modifying contracts.

Plaintiff contends that the execution and acceptance of the note paid the premium. The note clearly states that it is not given or accepted as payment. By the policy it is plainly stated that, except as in the policy provided, the policy shall be *ipso facto* null and void if any premium is not paid when due. The insured had consumed the entire cash, loan, extended, or paid-up value. The premium due April 30, 1923, was not paid within the period of grace allowed therefor. On the proof of nonpayment of the premium due April 30, 1923, the plaintiff by the terms of the policy has no right of recovery. To avoid such apparent termination or forfeiture, the plaintiff is compelled to rely upon the supplementary arrangement evidenced by the note. He founds, and must necessarily found, his claimed right to recovery on the supplemental or modified contract represented by both the policy and the note. By the conditions explicitly contained in the note, the insurance which plaintiff seeks to recover is terminated, and plaintiff is therefore driven to assume the position that the note is equivalent to an extension

2. INSURANCE: life insurance: discriminations, etc.: permissible collateral agreements.

of time for payment of the premium, and so far as it extends the time, is valid; that the grace allowance of 31 days provided by the policy must be annexed to the note; and that the note, so far as it extends the time of payment, was, with the grace allow-. ance claimed to be annexed to it, binding on the company; but that the conditions embodied in the note upon which the extension was granted and the note accepted, were not binding on the insured. The claimed invalidity of the condition of the extension is planted upon Code Supplement, 1913, Sections 1782, 1783-a, 1783-c; Code of 1897, Section 1783; Acts of the Thirty-eighth General Assembly, Chapter 348, Section 7; Code of 1924, Section 8666 *et seq.* These sections prohibit discrimination by life insurance companies, prohibit the making of special inducements not specified in the policy, prohibit the making of any contract other than as plainly expressed in the policy, and prohibit the use of any form of contract of insurance until a copy of it has been filed with and approved by the commissioner of insurance. Violation subjects the company to a forfeiture or penalty.

The distinction or discrimination, the contract not expressed in the policy, the form not filed with the commissioner or approved by him, claimed by plaintiff, consists in the extension of time which is the very thing that the plaintiff relies upon to avoid the forfeiture. If plaintiff's position is correct, then the extension of time or the waiver of payment at the time stipulated is void, within the principle of the cases construing the statute prohibiting discrimination by carriers in interstate commerce. *Georgia, F. & A. R. Co. v. Blish Mill. Co.,* 241 U. S. 190 (60 L. Ed. 948); *Keeney v. Chicago, B. & Q. R. Co.,* 183 Iowa 522. The statute now under consideration does not in terms apply to or prohibit the making of supplementary or later modifying contracts between the company and the insured not contemplated when the policy was issued. We cannot conceive of its being against public policy or contrary to the terms or purpose of the statute to permit an insurance company to grant an extension to a policyholder for whom, through misfortune or otherwise, the making of prompt payment of premium at the stipulated time may be inconvenient or impossible. Such extensions, in many cases at least, save the insurance to the policyholder. They do not (ordinarily at least) injuriously

affect other policyholders. Logically, if the conditions are void, it must be because the extension is void; for it is the extension, if anything, that discriminates. By means of the note, a supplementary contract is, in effect, entered into, to extend the time of payment of premium, and during the period of extension to continue the former contract in force. Though a new contract is thus made, it does not constitute a complete, independent, or distinct contract of insurance. It modifies as to one premium payment and continues the existing contract. The new contract is merely supplementary, and was not within the contemplation of the parties at the time the policy was issued. No discrimination was in view on either occasion. We perceive no reason for not permitting the company to grant an extension of time of payment of premium on terms that are mutually reasonable and not oppressive, or for punishing the company for aiding the insured, by annulling fair, non-oppressive, and non-fraudulent conditions. The right to make such extensions has been recognized by this court. *Salvidge v. Mutual Life Ins. Co.*, 195 Iowa 156; *McDonald v. Equitable Life Assur. Soc.*, 185 Iowa 1008. We have held, also, that a policy is valid and enforcible though not filed and approved, and that in such case the insured must recover, if at all, only on the terms of the policy as written. *Graf v. Employers' Liability Assur. Corp.*, 190 Iowa 445. This would seem to conclusively establish as applicable here the proposition that the plaintiff, by basing his claim for recovery, as he is compelled to do, upon the company's acceptance of the note, is bound by the terms of the note, specifying the conditions of such acceptance. We think that our conclusion is supported by the better considered cases. *Keller v. North American Life Ins. Co.*, 301 Ill. 198. (133 N. E. 726); *Wastun v. Lincoln Nat. Life Ins. Co.*, 12 Fed. (2nd Series) 422; *Fidelity Mut. Life Ins. Co. v. Price*, 117 Ky. 25, 32 (77 S. W. 384); *French v. Columbia Life & Tr. Co.*, 80 Ore. 412 (156 Pac. 1042, Ann. Cas. 1918D 484); *Short's Admx. v. Reserve Loan Life Ins. Co.*, 175 Ky. 554 (194 S. W. 773); *State Mut. Life Ins. Co. v. Rosenberry* (Tex.), 213 S. W. 242; *Southland Life Ins. Co. v. Hopkins* (Tex.), 244 S. W. 989.

In *Coughlin v. Reliance Life Ins. Co.*, 161 Minn. 446 (201 N. W. 920), relied upon by plaintiff, the insured paid part cash for the premium, and gave his note for the balance. The

statute of Minnesota required the premiums to be payable in advance, with a grace of 31 days, subject to interest. The court held that the facts there set out established a discriminatory rate in favor of the insured. *Langbehn v. American Ins. Co.*, 41 S. D. 581 (171 N. W. 820), involved a note given for the first premium, under a policy which did not provide for suspension for nonpayment of premium note. It was held that, under the statute requiring the policies to be written upon a standard form, and changes and exceptions to be added to or indorsed upon the policy, the policy cannot be avoided for nonpayment of the note. That case was applied in *Ritter v. American Life Ins. Co.*, 48 S. D. 231 (203 N. W. 503), and *Ritter v. American Life Ins. Co.*, 48 S. D. 571 (205 N. W. 382), to the case of a note given for subsequent premiums. The notes in those cases, however, appear to have been enforcible for the full amount of the year's premium, and provided for reinstatement of the policy on payment, and proof of good health. Conceding, however, that the rule of construction expressed in those cases would apply to the case at bar, we are not disposed to adopt it.

It is true that the policy under review declares merely that, if the premium is not paid when due, the policy shall be *ipso facto* null and void, but does not in terms state that nonpayment of a note given for a premium shall have that effect. Some courts have held that, under such a stipulation in the policy, the policy cannot be forfeited for nonpayment of a note given for a premium, even though the note in effect stipulates that it is not received in payment. See *Coughlin v. Reliance Life Ins. Co.*, 161 Minn. 446 (201 N. W. 920) ; *Ritter v. American Life Ins. Co.*, 48 S. D. 231 (203 N. W. 503), 48 S. D. 571 (205 N. W. 382) ; *Arnold v. Empire Mut. Ann. & Life Ins. Co.*, 3 Ga. App. 685 (60 S. E. 470) ; *Manhattan Life Ins. Co. v. Parker*, 204 Ala. 313 (85 So. 298). The rule of these cases seems to have had its origin in such cases as *McAllister v. New England Mut. Life Ins. Co.*, 101 Mass. 558 ; *Ohde v. Northwestern Life Ins. Co.*, 40 Iowa 357 ; *Michigan Mut. Life Ins. Co. v. Bowes*, 42 Mich. 19 (51 N. W. 962) ; *Dwelling House Ins. Co. v. Hardie*, 37 Kan. 674 (16 Pac. 92),—which as a cursory examination will show, are not at all applicable to the case here presented. The question was elaborately discussed in the

*Arnold* case, supra; but the conclusion there arrived at was not accepted by the Supreme Court of the state, in *State Life Ins. Co. v. Tyler*, 147 Ga. 287 (93 S. E. 415). The circuit court of appeals for this circuit, in *Wastun v. Lincoln Nat. Life Ins. Co.*, 12 Fed. (2d Series) 422, refused to follow the *Coughlin* and like cases. Here, the insured, before the premium was due, declared his inability to pay it, and in effect asked for 90 days' time, on note. The company was under no obligation to grant the extension or accept the note. It did so, however, and in taking the note it accommodated the insured, and secured an obligation on his part to pay the premium and interest, and did no wrong to its other policyholders. The supplemental contract represented by the note was presumably in the interest of both parties. It was made when the insured was not in default. It granted to him 5 months additional to the period of grace for payment. The grant, in effect, was upon plainly expressed conditions, which were not oppressive, and which the insured was under no compulsion to accept, and which were induced by no fraud, actual or constructive. By the terms of the note, on nonpayment the policy lapsed, and there would be due to the company only the premium earned during the extended period. There was no agreement and no demand for payment of premium accruing after default. We are of the opinion that the extension and the conditions on which it was granted were valid. See, further, *Robnett v. Cotton States Life Ins. Co.*, 148 Ark. 199 (230 S. W. 257); *Schmedding v. Northern Assur. Co.*, 170 Mich. 528 (136 N. W. 361).

II. Plaintiff argues that the insured was entitled to the 31 days' grace from the maturity of the note. The language of the policy is that "a grace of 31 days (without interest charge) will be allowed for the payment of renewal premium." The insured did not get the 31 days' grace prior to the maturity of the note, October 30, 1923; for the note is dated on the day when the premium by the policy became due, April 30, 1923, and bears interest from date. By the terms of the note, the proportionate part of its amount earned during the extended period, but not the unearned amount, became the liability of the insured, and a charge against the cash or extended insurance value. Extensions of time of payment (except as af-

3. INSURANCE: life insurance: premium: non-right to grace in payment of note.

fected by the 31 days' grace after the stipulated maturity date of the premium) were not contemplated by the policy. The parties by the grace provision of the policy had in mind only grace after the then stipulated maturity dates. The extension of time originated in, and the terms on which it was contracted for are expressed solely by, the note. Those terms are plain. By them nonpayment of the note or extension at maturity by that fact lapsed the policy. There would be due the company the earned premium, not for the period of the note and 31 days' grace, but for the period of the note only. The right to pay the premium after the expiration of the grace provided in the contract existed only by virtue of the note. The *ipso facto* lapsing of the policy by the nonpayment of the note at maturity cannot be distorted into a lapsing by the *ipso facto* failure to pay the note 31 days after its maturity. Grace allowance is not referred to, either directly or indirectly, in the extension arrangement. The agreement for extension was in writing. The writing is complete upon its face. It expresses the terms upon which the note was given and accepted. Our attention has been directed to no principle which would deny to the company and the insured the right to make a binding obligation to exchange the grace for other, or what the insured may consider equivalent, benefits, in the absence of oppression or fraud. We are of the opinion that the right to grace was waived or exchanged for the extension, the terms of which cannot be modified by importing into them a further provision for grace. *Robnett v. Cotton States Life Ins. Co.*, 148 Ark. 199 (230 S. W. 257); *Southland Life Ins. Co. v. Hopkins* (Tex.), 244 S. W. 989; *Kansas City Life Ins. Co. v. Leedy*, 62 Okla. 131 (162 Pac. 760); *Schmedding v. Northern Assur. Co.*, 170 Mich. 528 (136 N. W. 361); *Holly v. Metropolitan Life Ins. Co.*, 105 N. Y. 437 (11 N. E. 507).

The insured had consumed the cash value of the policy, and consequently there is no paid-up insurance to which plaintiff is entitled.

Plaintiff has filed motion to strike amendment to abstract. It is overruled.

The judgment is—*Affirmed.*

EVANS, C. J., and DE GRAFF, ALBERT, and KINDIG, JJ., concur.